# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| VICTOR TAGLE, | ) |
| Plaintiff, | ) Case No. 2:15-cv-02143-RFB-CWH |
| vs. | ) **SCREENING ORDER AND REPORT AND RECOMMENDATION** |
| STATE OF NEVADA, et al., | ) |
| Defendants. | ) |

Plaintiff Victor Tagle is an inmate in the custody of the Nevada Department of Corrections who is proceeding pro se. Plaintiff submitted a civil rights complaint under 42 U.S.C. § 1983 (ECF No. 1-1) dated November 9, 2015, an amended complaint (ECF No. 2) dated December 10, 2015, a "tort action" (ECF No. 6) dated September 6, 2016, and two applications to proceed *in forma pauperis* (ECF Nos. 1, 5). Plaintiff also filed three miscellaneous motions (ECF Nos. 7, 10, 14).

**I.   *IN FORMA PAUPERIS* APPLICATIONS**

As a preliminary matter, the court notes that Plaintiff has "three strikes" under the Prison Litigation Reform Act.[1] Under 28 U.S.C. § 1915(g), "if [a] prisoner has, on 3 or more prior occassions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted," he may not proceed *in forma pauperis*, and, instead, must pay the full $350.00 filing fee in advance unless he is "under imminent danger of serious physical injury."

---

[1] *See Tagle v. State of Nevada et al.*, 2:15-cv-02083-RCJ-GWF (dismissed for failure to state a claim); *Tagle v. State of Nevada et al.*, 2:15-cv-02358-MMD-PAL (dismissed for maliciousness and failure to state a claim); and *Tagle v. State of Nevada et al.*, 2:16-cv-00852-JAD-VCF (dismissed for maliciousness and failure to state a claim).  The court takes judicial notice of its prior records in these cases.

Given that Plaintiff's "tort action" (ECF No. 6) alleges that prison officials have attempted to murder him by poisoning him and otherwise tampering with his food and medication, and that prison officials have been deliberately indifferent to his medical needs, the court finds that this case falls within the "imminent danger of serious physical injury" exception and therefore will consider Plaintiff's request to proceed *in forma pauperis*. Although some of Plaintiff's claims in the "tort action" do not satisfy the imminent danger standard, the court will consider those claims because "qualifying prisoners can file their entire complaint [*in forma pauperis*]; the exception does not operate on a claim-by-claim basis or apply to only certain types of relief." *Andrews v. Cervantes*, 493 F.3d 1047, 1052 (9th Cir. 2007).

Plaintiff submitted two applications to proceed *in forma pauperis*. (ECF Nos. 1, 5). The court will review the most recent application, which is filed in the court's docket at ECF No. 5. Plaintiff submitted the declaration required by 28 U.S.C. §1915(a) showing an inability to prepay fees and costs or to give security for them. Based on the information regarding Plaintiff's financial status, the court finds Plaintiff is unable to pay an initial installment toward the full filing fee required under 28 U.S.C. § 1915(b). However, Plaintiff will be required to make installment payments toward the full $350.00 filing fee when he has funds available. Plaintiff's request to proceed *in forma pauperis* (ECF No. 5) therefore will be granted, and Plainitff's previous request to proceed *in forma pauperis* (ECF No. 1) will be denied as moot. The court now screens Plaintiff's complaints under 28 U.S.C. § 1915A.

## II.     SCREENING STANDARD

Federal courts must conduct a preliminary screening in any civil case "in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *Id.* § 1915A(b)(1),(2). In addition to the screening requirements under § 1915A, under the Prison Litigation Reform Act, the court must dismiss the case if "the allegation of poverty is untrue" or if the court determines the action "is frivolous or malicious; fails to state a claim on which relief may be granted; or seeks

monetary relief against a defendant who is immune from such relief." *Id.* § 1915(e)(2).

Dismissal for failure to state a claim under § 1915A incorporates the standard for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014). To survive § 1915A review, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The court liberally construes pro se civil rights complaints and may only dismiss them "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

In considering whether the complaint is sufficient to state a claim, all allegations of material fact are taken as true and construed in the light most favorable to the plaintiff. *Wyler Summit P'ship v. Turner Broad. Sys. Inc.*, 135 F.3d 658, 661 (9th Cir. 1998) (citation omitted). Although the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is insufficient. *Id.* Unless it is clear the complaint's deficiencies could not be cured through amendment, a pro se plaintiff should be given leave to amend the complaint with notice regarding the complaint's deficiencies. *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

### III. SCREENING OF COMPLAINT

#### A. Plaintiff's Second Amended Complaint (ECF No. 6) is the Operative Pleading

In his complaint and amended complaint, Plaintiff asserts that his constitutional rights were violated because the Eighth Judicial District Court's ADR Commissioner, Chris A. Beecroft, Jr., allegedly accepted bribes in a case involving Plaintiff, resulting in a loss of Plaintiff's money and property. (*See* Compl. (ECF No. 1-1); Am. Compl. (ECF No. 2).) Plaintiff sues Defendants Chris A. Beecroft, the State of Nevada, and unnamed Eighth Judicial District Court clerks. (Am. Compl. at 1-3.) In his "tort action"—which the court construes as a second amended complaint and will reference as the second amended complaint—Plaintiff makes various allegations regarding his conditions of confinement that date back to 2011. (*See* Tort Action (ECF No. 6).) The caption in the second amended complaint references the State of Nevada, the Nevada Department of

Corrections, and Nevada Department of Corrections employees as defendants, though various individuals are referred to by name throughout the second amended complaint. (*Id.* at 1.)

It is a "well-established doctrine that an amended pleading supersedes the original pleading." *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992). After amendment, "the original pleading no longer performs any function and is treated thereafter as non-existent." *Id.* (quotation omitted). Thus, parties and claims that are mentioned in the original complaint that are not included in an amended complaint are no longer part of the case, and the court cannot refer to a prior complaint to make an amended complaint complete. *See id.*

Here, Plaintiff's second amended complaint dealing with his conditions of confinement supersedes his complaint and first amended complaint dealing with Chris Beecroft and the state court proceedings. Thus, the court will not consider the allegations in those pleadings and only will analyze the allegations in Plaintiff's second amended complaint. Plaintiff is advised that going forward, the operative complaint in this case is Plaintiff's second amended complaint (ECF No. 6).

**B.    Background**

In his second amended complaint, Plaintiff alleges that in 2011, he was kidnaped by a Nevada Department of Corrections guard posing as a "Metro Officer," resulting in him being sentenced. (Tort Action (ECF No. 6) at 2.) Plaintiff further alleges that in 2011 he suffered from constipation, and that for a period of twelve weeks, he was unable to eat and lost more than one hundred pounds. (*Id.* at 2-3.) According to Plaintiff, during this time period, prison medical staff were giving him an anti-diarrheal medication rather than a laxative, thereby contributing to his constipation. (*Id.* at 3.)

Plaintiff alleges that in 2012, he had a sore throat and was given what he was told was a baby aspirin, but that it was actually a psychotropic drug that caused him to feel euphoric for days. (*Id.* at 4.) Additionally, Plaintiff alleges that in 2012 he was physically assaulted and forced to take a tuberculous vaccination. (*Id.*) Plaintiff further alleges that in 2012 his gallbladder "burst" as a result of an unknown agent that he ingested in his food trays. (*Id.* at 5.) He alleges that after he returned to the prison from the hospital, a prison guard named Kenneth Wing either refused to feed him or spit in his food, and that this behavior continued until May 21, 2015, when Defendant Wing

assaulted Plaintiff. (*Id.* at 5, 16.) According to Plaintiff, Defendant Wing claimed that Plaintiff assaulted him, resulting in Plaintiff being put in solitary confinement. (*Id.* at 5, 16.) Plaintiff contends that during his time in prison "multiple guards have messed with [his] food . . . by giving [him] the smallest food tray spitting in it or giving [him] spoiled food." (*Id.* at 6.)

   Plaintiff alleges that on May 12, 2016, there was an unknown object in his food that became lodged in his throat. (*Id.* at 6.) Specifically, he contends that "something in the food stuck to my throat, got jammed between the larynx and Adam's apple" and that the object remains in his throat. (*Id.* at 6, 8.) When he sought medical attention, he was given "a little green pill" that made him sleep for five days. (*Id.* at 6-7.) Plaintiff claims that the pill was a psychotropic drug and that prison doctors prescribe psychotropic drugs for "anything." (*Id.* at 7-8.) Plaintiff contends that he specifically asked the medical provider how a pill would resolve the issue with his throat but that the provider responded, "well, ahem, arg, ah, hum . . . ." (*Id.* at 6.)

   Plaintiff further alleges that he went on a hunger strike in July 2016 because Mr. Wing is a sadist who has been harassing him since 2012. (*Id.* at 8.) After he ended his hunger strike, he alleged that on August 14, 2016, Mr. Wing fed him "food tray samples" that were "old, dry, and cold" and that should have been discarded rather than served. (*Id.* at 8-9.) On August 17, 2016, Plaintiff began suffering from food poisoning. (*Id.* at 9.) He was treated by a nurse who told him there was "bacteria" in his food and gave him Immodium, which did not help him as he continued to vomit for days. (*Id.*)

   Two days later, Plaintiff contends that prison guards gave him a food tray and "the lettuce was old and black, the corn was dry, old, the spaghetti was very little, and all over the plate . . . like the tray had been tosted [sic] all over." (*Id.* at 10.) However, Plaintiff alleges that on the food cart, the other food trays looked fresh and orderly. (*Id.*) The next day, Plaintiff alleges that he became sick again but that his grievances demanding medical attention were ignored. (*Id.* at 11.) He alleges that prison guard Vazquez also gave him sample food trays that caused food poisoning. (*Id.* at 11-12.) He claims that in August of 2016, a case worker named Jeorja Powers demanded that he stop filing grievances and that she threw a 14-page stack of papers at him that hit him in the face. (*Id.* at 13, 16.) He also claims that Powers has been taking his mail and harassing him since May

12, 2016. (*Id.* at 13.) According to Plaintiff, Warden Baca "has been informed of this abuses [sic] since 5/12/16, however, he had neglected them." (*Id.* at 16.) Director Sheryl Foster has been informed, too, like usual, she couldn't care less." (*Id.*)

Although he does not group his factual allegations according to claims, at the beginning of the second amended complaint Plaintiff alleges he is asserting claims for attempted murder by poisoning, cruel and unusual punishment, intentional infliction of emotional distress, harassment, discrimination, deliberate medical neglect, deliberate indifference to serious medical needs, medical malpractice, professional neglect, deprivation of civil rights, and indifference to human pain. In the case caption, he only identifies the State of Nevada, NDOC, and NDOC's employees as defendants.[2] (*Id.* at 1.) Plaintiff references various individuals throughout the complaint, but then does not seek relief against all of them in his prayer for relief. (*See id.* at 1-16.) Reconciling his factual allegations with the individuals against whom he prays for relief, the court understands Plaintiff to be alleging claims against the following defendants: State of Nevada, NDOC, Kenneth Wing, Guard Vazquez, Case Worker Jeorja Powers, Warden Baca, and Director Sheryl Foster.

Liberally construing the second amended complaint, the court understands Plaintiff to be asserting the following claims under 42 U.S.C. § 1983: (1) Eighth Amendment excessive force against Defendant Wing related to the physical assault, (2) Eighth Amendment deliberate indifference against unnamed NDOC employees for treating him for the unknown item lodged in his throat with psychotropic drugs, (3) Eighth Amendment conditions of confinement related to the spoiled food trays against Defendants Wing and Vazquez, (4) First Amendment retaliation against Defendant Powers, and (5) supervisory liability against Defendants Baca and Foster. Although Plaintiff also alleges claims related to medical care and other issues dating back to 2011, as discussed below, the court will recommend that those claims be dismissed as untimely.

**C.     Analysis**

Title 42 U.S.C. § 1983 provides that "[e]very person who, under color of [law], subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights,

---

[2] The court understands "NDOC" to mean Nevada Department of Corrections.

privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ." Section 1983 does not create any substantive rights, but provides a method for enforcing rights contained in the Constitution or federal statutes. *Crowley v. Nev. ex. rel. Nev. Sec'y of State*, 678 F.3d 730, 734 (9th Cir. 2012). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege "(1) the defendants acting under color of state law (2) deprived plaintiffs of rights secured by the Constitution or federal statutes." *Williams v. California*, 764 F.3d 1002, 1009 (9th Cir. 2014) (quotation omitted).

### 1. *Claims Against the State of Nevada and NDOC*

The court will recommend dismissal with prejudice all claims against the State of Nevada as amendment would be futile. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 65 (1989) (holding that states are not persons under § 1983). The court also will recommend dismissal with prejudice of all claims against the NDOC, as amendment would be futile. The NDOC is an arm of the State of Nevada and is not a "person" for purposes of 42 U.S.C. § 1983. *See Doe v. Lawrence Livermore Nat. Lab.*, 131 F.3d 836, 839 (9th Cir. 1997).

### 2. *Time-Barred Claims*

Given that 42 U.S.C. § 1983 does not contain a specific statute of limitations, federal courts borrow state statutes of limitations for personal injury actions in § 1983 suits. *Alameda Books, Inc. v. City of Los Angeles*, 631 F.3d 1031, 1041 (9th Cir. 2011) ("The statute of limitations applicable to an action pursuant to 42 U.S.C. § 1983 is the personal injury statute of limitations of the state in which the cause of action arose.") The Nevada limitations period applicable in this case is two years. *See Perez v. Seevers*, 869 F.2d 425, 426 (9th Cir. 1989) (per curiam) (citing Nev. Rev. Stat. 11.190(4)).

Plaintiff's second amended complaint was filed on September 6, 2016. Applying Nevada's two-year limitations period, any acts that occurred more than two years before that date are time-barred. Plaintiff alleges that in 2011 he was kidnaped and suffered medical issues related to receiving the incorrect drug for constipation. He further alleges that in 2012 an NDOC employee physically assaulted him to force him to receive a vaccination and that there was an unknown object in his food that he ingested, causing his gallbladder to burst. Given that these incidents

occurred outside of the two-year limitations period, the court will recommend dismissal with prejudice of any claims related to these allegations.

### 3. *Excessive Force*

The Eighth Amendment to the United States Constitution prohibits "cruel and unusual" punishment. U.S. Const. amend. VIII. When a prison official is accused of using excessive physical force in violation of the Eighth Amendment's cruel-and-unusual-punishment clause, the question turns on whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically for the purpose of causing harm. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992) (citing *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). In determining whether the use of force was wanton and unnecessary, it may also be proper to consider factors such as the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. *Hudson*, 503 U.S. at 7. Although an inmate need not have suffered serious injury to bring an excessive force claim against a prison official, the Eighth Amendment's prohibition on cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force. *Id.* at 9-10.

Here, Plaintiff alleges that on May 21, 2015, Defendant Wing physically assaulted him. He does not provide any context regarding the circumstances of the assault or the type of physical harm inflicted on him by the physical assault, though he does characterize Defendant Wing as a sadist who harassed Plaintiff for years. Without more detail, the court is unable to determine whether Plaintiff states an Eighth Amendment excessive force claim against Defendant Wing. The court therefore will recommend that this claim be dismissed without prejudice and that Plaintiff be given leave to file a third amended complaint. If Plaintiff chooses to file a third amended complaint, he should allege additional facts regarding the circumstances surrounding the assault and the injuries he sustained, if any.

### 4. *Deliberate Indifference*

"Under 42 U.S.C. § 1983, to maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*,

1  439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  The
2  test for deliberate indifference has an objective and a subjective component.  *See Id.*  Objectively,
3  the violation must be "sufficiently serious."  *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000)
4  (quotation omitted).  In the context of medical needs, a violation is sufficiently serious if "failure to
5  treat a prisoner's condition could result in further significant injury or the unnecessary and wanton
6  infliction of pain."  *Jett*, 439 F.3d at 1096.

7  Subjectively, the prisoner must show the defendant acted with a culpable state of mind.
8  *Johnson*, 217 F.3d at 731.  To establish the requisite state of mind, an inmate must show that "the
9  official was aware of a risk to the inmate's health or safety and that the official deliberately
10 disregarded the risk." *Foster v. Runnels*, 554 F.3d 807, 814 (9th Cir. 2009).  Specifically, the
11 official must know of and disregard "an excessive risk to inmate health or safety; the official must
12 both be aware of facts from which the inference could be drawn that a substantial risk of serious
13 harm exists, and he must also draw the inference." *Estate of Ford v. Ramirez–Palmer*, 301 F.3d
14 1043, 1050 (9th Cir. 2002) (quotation omitted).

15 A prison official is deliberately indifferent to a prisoner's serious medical need if he denies,
16 delays, or intentionally interferes with medical treatment.  *Jett*, 439 F.3d at 1096.  Negligence in
17 diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth
18 Amendment rights.  *Id.*  Moreover, a difference of opinion between the physician and the prisoner
19 concerning the appropriate course of treatment does not amount to deliberate indifference to serious
20 medical needs.  *See Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004); *Jackson v. McIntosh*,
21 90 F.3d 330, 332 (9th Cir. 1996).  Instead, the plaintiff must show the course of treatment the
22 physician chose "was medically unacceptable under the circumstances" and the physician chose
23 this course of action "in conscious disregard of an excessive risk to the prisoner's health."
24 *Toguchi*, 391 F.3d at 1058 (quotation omitted).

25 Here, Plaintiff alleges that NDOC medical providers deliberately treated him with
26 psychotropic drugs rather than dislodging the unknown item that was lodged in his throat.  He
27 further alleges that because he was not treated properly, the unknown item remains lodged in his
28 throat.  Based on these allegations that NDOC medical providers intentionally denied Plaintiff

9

treatment for the item lodged in his throat and instead treated him with a psychotropic drug, the court finds that Plaintiff states a claim for Eighth Amendment deliberate indifference against the unknown NDOC medical providers who allegedly gave Plaintiff psychotropic drugs rather than addressing his medical condition.

### 5. *Conditions of Confinement*

The "treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). Conditions of confinement may be "restrictive and even harsh." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). However, "[p]rison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). Regarding food, the Eight Amendment "requires only that prisoners receive food that is adequate to maintain health; it need not be tasty or aesthetically pleasing." *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993). "The fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation." *Id.* (citation and internal quotations omitted).

When determining whether the conditions of confinement meet the objective prong of the Eighth Amendment analysis, the court must analyze each condition separately to determine whether that specific condition violates the Eighth Amendment. *See Wright v. Rushen*, 642 F.2d 1129, 1133 (9th Cir. 1981). The court should also consider the amount of time to which the prisoner was subjected to the condition. *Hearns v. Terhune*, 413 F.3d 1036, 1042 (9th Cir. 2005). As to the subjective prong of the Eighth Amendment analysis, prisoners must establish prison officials' "deliberate indifference" to the unconstitutional conditions of confinement to establish an Eighth Amendment violation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Here, Plaintiff alleges that on multiple occassions in August of 2016, Defendants Wing and Vazquez deliberately served him with spoiled food trays as part of a campaign of harassment against him by Defendant Wing dating back to 2012. While Plaintiff complains that the food was cold, dry, and disheveled—which is not enough to state an Eighth Amendment conditions of confinement claim—he further alleges that the food was spoiled and that it made him ill on

1  multiple occassions over a period of months.  Liberally construing Plaintiff's allegations, the court
2  finds that Plaintiff states an Eighth Amendment claim related to his conditions of confinement
3  against Defendants Wing and Vazquez.

          6.     *Retaliation*

Prisoners have a First Amendment right to file prison grievances and to pursue civil-rights litigation in the courts.  *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2004).  "Without those bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy prison injustices.  And because purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield."  *Id.*  To state a viable First Amendment retaliation claim in the prison context, a plaintiff must allege: "(1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  *Id.* at 567-68.

Here, the court finds that Plaintiff states a colorable retaliation claim against Defendant Powers.  Plaintiff alleges that he filed grievances requesting medical attention related to food poisoning he contracted from the contaminated meal trays.  Plaintiff further alleges that in retaliation for filing the grievances, Defendant Powers threw a 14-page document at Plaintiff's face and demanded that he stop filing grievances.  The retaliation claim therefore will proceed against Defendant Nash.

          7.     *Supervisory Liability*

A defendant is not liable under 42 U.S.C. § 1983 unless he personally participated in the alleged deprivation of the plaintiff's rights.  *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).  "[T]here is no respondeat superior liability under section 1983."  *Id.*  However, a supervisor personally participates, and may be liable in his own right, if the supervisor "directed the violations, or knew of the violations and failed to act to prevent them."  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Advancing a policy that instructs subordinates to violate constitutional rights also

is a basis for § 1983 liability. *OSU Student All. v. Ray*, 699 F.3d 1053, 1076 (9th Cir. 2012).

Plaintiff alleges that Defendant Baca and Foster were aware of the "abuses" in this case and that they failed to do anything about them. However, there are no specific allegations that Baca and Foster knew that various other defendants were going to physically assault Plaintiff, provide him with inadequate medical care, tamper with his food trays, or retaliate against him for filing grievances, or that they participated in or directed these actions. Nor does he allege that they advanced a policy requiring the NDOC employees to violate constitutional rights. The court therefore will recommend dismissal of the complaint with respect to Defendants Baca and Foster, with leave to amend.

### 8. *Amendment*

If Plaintiff chooses to file a third amended complaint, Plaintiff is advised all defendants must be identified in the caption of the pleading and that he must specify which claims he is alleging against which defendants. Although the Federal Rules of Civil Procedure adopt a flexible pleading policy, Plaintiff still must give defendants fair notice of each of the claims Plaintiff is alleging against each defendant. Specifically, Plaintiffs must allege facts showing how each named defendant is involved and the approximate dates of their involvement.

Plaintiff further is advised that in drafting his third amended complaint, all that is required is that he state, in short and plain terms, a claim showing an entitlement to relief. *See* Fed. R. Civ. P. 8(a). Although Plaintiff must give the defendants fair notice of the claims alleged against them, intricately detailed and lengthy factual allegations are not necessary. Plaintiff is advised that if he files a third amended complaint, the original complaint (ECF No. 1-1), amended complaint (ECF No. 2), and the "tort action" that the court has construed as a second amended complaint (ECF No. 6) no longer serve any function in this case. As such, if Plaintiff files a third amended complaint, each claim and the involvement of each defendant must be alleged sufficiently. The court cannot refer to a prior pleading or to other documents to make Plaintiff's third amended complaint complete. The third amended complaint must be complete in and of itself without reference to prior pleadings or to other documents. Plaintiff must file the third amended complaint on the court's approved prisoner civil rights form and it must be titled "third amended complaint."

If Plaintiff does not file a third amended complaint, this case will proceed only as to Plaintiffs Eighth Amendment deliberate indifference claim against the unnamed NDOC medical providers, his Eighth Amendment conditions of confinement claim against Defendants Wing and Vazquez, and his retaliation claim against Defendant Nash.

**D.     Miscellaneous Motions**

*1.     Motion for a Form 30, Suggestion of Death (ECF No. 7)*

Plaintiff requests that the court send him a "form 30, suggestion of death upon the record, under Rule 25(A)(1)." (ECF No. 7.) While Federal Rule of Civil Procedure 25(a)(1) prescribes the procedure to follow for substituting a party when a plaintiff or a defendant in the litigation dies during the course of the proceedings, the court is not aware of a particular form for this situation. The court therefore will deny this motion.

*2.     Motion for Review and Correction of the Record (ECF No. 10)*

Plaintiff states that on December 9, 2015, he submitted a case with the caption "V. Tagle v. S. of Nevada, Chris A. Beecroft" and that it was assigned case number 2:15-cv-02143-RFB-CWH. He further states that on September 6, 2016, he submitted another case with the caption "V. Tagle v. S. of Nevada, NDOC, NDOC's employees" and it was given the case number 2:15-cv-2143. Plaintiff is requesting clarification on why these documents were assigned the same case number. In reviewing the court's docket, the court notes that the "tort action" submitted on September 6, 2016 (ECF No. 6) states on the caption "case no. 15 cv 2143" in what appears to be Plaintiff's handwriting. Thus, the reason the court filed the document in case number 2:15-cv-02143-RFB-CWH is because Plaintiff labeled the filing with that case number. To the extent Plaintiff's motion requests clarification regarding the case numbers, it is granted. To the extent Plaintiff requests other relief, the motion is denied.

*3.     Motion for Disclosure of Defendants Represented by the State (ECF No. 14)*

Plaintiff states that he received "notice of change of counsel of record" signed by Deputy Attorney General Clark Leslie. He requests that this attorney inform him which defendants he represents. The court understands Plaintiff to be referring to the notice of change of attorney (ECF No. 12) filed on November 2, 2016. The caption of that document states that Clark Leslie is the

attorney for Defendants Christopher Beecroft and State of Nevada.  (ECF No. 12 at 1.)  The court will direct the Clerk of Court to send another copy of this document to Plaintiff.  To the extent Plaintiff requires additional clarification, he may contact Clark Leslie or file another motion.

### III.   CONCLUSION

IT IS THEREFORE ORDERED that Plaintiff Victor Tagle's application to proceed *in forma pauperis* (ECF Nos. 5) is GRANTED.  Plaintiff will not be required to pay an initial installment fee and is permitted to maintain this action to conclusion without prepaying fees or costs or giving security for them.  However, under 28 U.S.C. § 1915(b), Plaintiff will be required to make installment payments toward the full $350.00 filing fee when he has funds available.  This order does not extend to the issuance of subpoenas at government expense.

IT IS FURTHER ORDERED that under 28 U.S.C. § 1915(b), the Nevada Department of Corrections must pay to the Clerk of the United States District Court, District of Nevada, 20% of the preceding month's deposits to the account of Plaintiff Victor Tagle, #1080239, in the months that the account exceeds $10.00, until the $350.00 filing fee has been paid for this case.  The Clerk of Court must send a copy of this order to the attention of Albert G. Peralta, Chief of Inmate Services for the Nevada Department of Prisons, P.O. Box 7011, Carson City, NV 89702.

IT IS FURTHER ORDERED that if this action is dismissed or is otherwise unsuccessful, the full $350.00 filing fee is still due under 28 U.S.C. § 1915.

IT IS FURTHER ORDERED that Plaintiff's application to proceed *in forma pauperis* (ECF No. 1) is DENIED as moot.

IT IS FURTHER ORDERED that the Clerk of Court must file the complaint (ECF No. 1-1).

IT IS FURTHER ORDERED that Plaintiff's "tort action" (ECF No. 6), which the court construes as a second amended complaint, is the operative complaint in this case as stated in this order.

IT IS FURTHER ORDERED that the Clerk of Court must send to Plaintiff the approved form for filing a § 1983 complaint, instructions for the same, and a copy of his tort action/second amended complaint (ECF No. 6).

IT IS FURTHER ORDERED that Plaintiff's Motion for a Form 30, Suggestion of Death

1    (ECF No. 7) is DENIED.

2        IT IS FURTHER ORDERED that Plaintiff's Motion for Review and Correction of the

3    Record (ECF No. 10) is GRANTED in part and DENIED in part as stated in this order.

4        IT IS FURTHER ORDERED that Plaintiff's Motion for Disclosure of Defendants

5    Represented by the State (ECF No. 14) is GRANTED.  The Clerk of Court must sent to Plaintiff a

6    copy of Notice of Appearance (ECF No. 4).

7        IT IS RECOMMENDED that the claims against the State of Nevada and the Nevada

8    Department of Corrections be DISMISSED without leave to amend as amendment would be futile.

9        IT IS FURTHER RECOMMENDED that the claims barred by the 2-year statute of

10   limitations be DISMISSED without leave to amend as amendment would be futile.

11       IT IS FURTHER RECOMMENDED that the excessive force claim against Defendant

12   Wing be DISMISSED without prejudice for failure to state a claim upon which relief can be

13   granted, with leave to amend.

14       IT IS FURTHER RECOMMENDED that the supervisory liability claims against

15   Defendants Baca and Foster be DISMISSED without prejudice for failure to state a claim upon

16   which relief can be granted, with leave to amend.

17       IT IS FURTHER RECOMMENDED that the court set a deadline for Plaintiff to file an

18   amended complaint.

### NOTICE

20   This report and recommendation is submitted to the United States district judge assigned to

21   this case under 28 U.S.C. § 636(b)(1).  A party who objects to this report and recommendation may

22   file a written objection supported by points and authorities within fourteen days of being served

23   with this report and recommendation.  Local Rule IB 3-2(a).  Failure to file a timely objection may

24   waive the right to appeal the district court's order.  *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir.

25   1991).

26   DATED: February 10, 2017

27   _____
     **C.W. Hoffman, Jr.**
28   **United States Magistrate Judge**